Lane and Sullivan *v.* Logue.

LANE an l SULLIVAN *v.* JOHN LOGUE *et al.*

PURCHASER. *Bona fide. Mortgage.* If a party holding a note for purchase money for land under title bond, surrenders his vendor's lien by making a deed and taking a mortgage to secure his debt, he is a *bona fide* purchaser. The theory on which a mortgage to secure a pre-existing debt is held not to be a purchase for value, is that the creditor parts with nothing, only gets additional security, but here he does part with a security for his debt, which is as much a valuable consideration as if he had paid money for it.

FROM WILSON.

Appeal from the Chancery Court at Lebanon. GEO. E. SEAY, Ch.

STOKES & SON for complainants.

J. S. GRIBBLE and W. H. WILLIAMSON for defendants.

FREEMAN, J., delivered the opinion of the court.

Complainants, Lane and Sullivan, are the sureties of P. Anthony on a guardian bond for a lunatic brother, Mark Anthony, given at June term, 1867, of the county court of Wilson county. Anthony, as guardian, received on June 19, 1867, about $1,700, of which he deposited in Third National Bank at Nashville $1,654 on same day.

August, 1874, P. Anthony was removed as guardian, and John L. Anthony appointed in his stead. He has

brought a bill against P. Anthony, and the sureties
on his bond, to recover the funds of his ward in the
hands of the former guardian. Anthony is embar-
rassed, if not insolvent, or so it is charged in the
bill.

These complainants, as his sureties, file this bill to
compel the " present guardian to pursue and appro-
priate funds of his ward, which they claim were mis-
appropriated by the guardian, and used in payment of
a certain tract of land of 283 acres in Wilson county
and if not successful in this, they assert the right to
pursue said trust fund, and have the land sold for its
payment by way of relieving or indemnifying them
from loss in consequence of their suretyship.

The facts necessary to be stated are, that before
the fall of 1866, Logue and Harkreader were owners
in common of the tract of land in controversy, hav-
ing purchased it at a chancery sale, but there remained
due of the purchase money between one thousand and
eleven hundred dollars. They agreed to sell this land
to P. Anthony at about the sum of $6,500, he hav-
ing notice of the unpaid purchase money, and agree-
ing to pay the same to Riddle, the clerk and master,
as part of the price due to Harkreader and Logue.
He therefore purchased, subject to a lien for the un-
paid purchase money, which he agreed to discharge
for the parties owing the debt, and receive a credit
with them for the amount on his cash payment of
$3,000, as per his contract with Harkreader and Logue.
The sale was a joint sale by Harkreader and Logue
of the entire tract of land, though they afterwards

agreed on a division of the purchase money—the one taking the cash payment, the other the notes for deferred payments. This was done, as shown for their own convenience.

At the time of the sale an agreement was made between Harkreader and Logue as to division of the purchase money. Anthony knew of this arrangement, and so after discharging a portion of what is known as the cash payment to Harkreader on January 1, 1867, went to the house of Logue to give his note or notes for deferred payment, $3,481.34, and which, in the language of Logue in his deposition, was to be given to me in a note under a mortgage. It appears, however, from the statements of the bill, as well as the answer of Logue, that the deed of trust was not executed till after Anthony had paid off the debt due the clerk and master, and had obtained the title. This deed, executed about July, 1867, secured the balance of purchase money, as well as some other debts of Anthony, and seems to have been made to Logue, though it is not in the record.

Logue in 1873, in execution of the trust, and before the filing of this bill, executed said trust, and sold the land on a credit to one Omahondra, who is made a defendant in this case. This sale is charged to be fraudulent, but no proof of it. Taking the statements of the answer, as well as all the circumstances, we conclude that Logue objected and remonstrated against Anthony's having obtained the legal title from Riddle through the chancery court, he only having a bond for title when the purchase money

should be paid, and on this account the deed of trust was executed by Anthony to secure the notes.

Assuming this to have been the case, the question presented, is Logue an innocent purchaser for value, or entitled to hold under his deed of trust as such against the claim of these sureties? He and Harkreader, or he himself, had under the contract of sale, with title bond, the legal title as security for the purchase money. The obtention of the legal title wrongfully, without assent of the vendors, did not displace the lien in the nature of a mortgage held by Harkreader and Logue. Logue who had, under the arrangement between him and Harkreader, the beneficial interest in this lien, yields it in consideration of the execution of the deed of trust. Is not this a valuable consideration sufficient to support this conveyance as to a *bona fide* holder? He has parted with precisely the value he receives, and only changed the form of the security. That security in its changed form was only, however, one for the same sum, and on the same property as the other. He has then given up full value for the new security. If that security is overridden by these parties, ought he not to that extent to be entitled to be restored to his original equity as against these sureties?

Is is true it is to secure a pre-existing debt, but at the same time there is given up what was valuable, a lien secured by what was equivalent to a mortgage, by retention of the legal title. The theory on which a mortgage to secure a pre-existent debt is held not to be a purchase for value, is, that the

creditor parts with nothing, only gets additional security for his debt. But here he does part with as much value as his debt—that is, security ample to pay it—ought not the converse of the principle to be true, that where he does part with value, and the security is not simply for a pre-existent debt, but has this added element, it is based on valuable consideration as much as if he had paid money for it? A valuable consideration may as well consist in property or a valuable right in property as in money, which is but the standard by which that value is measured in the market.

It is true this court held in the case of *Grigg* v. *Jones*, 5 Heis., 443, that where a vendor conveyed the land, reserving no lien, and on the same day took a deed of trust from the vendee to secure the notes given for the purchase money, the vendee dying before foreclosure of the trust, that the widow of the vendee was entitled to dower as against the vendor enforcing his mortgage security. But this was put on the express language of act of 1856, sec. 2399, of Code, that a widow should "be entitled to dower in lands mortgaged or conveyed in trust to pay debts, when the husband dies before foreclosure of the mortgage or sale under the deed." The case was literally within the statute, and under the statute the dower right was equally good against a mortgage given to secure a pre-existent debt. So that the question of a *bona fide* purchaser for value could not arise in that case, and was not decided. The principle we have discussed does not trench upon what has been held

by this court, that a beneficiary of a trust fund may follow the fund always as against a *mere* creditor of the party who has violated his trust by investing the money in land—such creditor giving nothing for his security; but the case in hand is not that, but one where the security is purchased by a valuable consideration, and may well stand on that. It is not less value parted with, because the security thus obtained is also a security for a pre-existent debt. As said in the case of *Ezell* v. *Wright*, 3 Lea, 514, it was a departure from sound principle when we held that a secret equity growing out of a breach of trust was allowed to prevail against a creditor who had obtained the legal title either directly or in trust as a security for his debt. This being so, it is clearly wrong to push the error farther by holding it covers a case like the present, where a valuable consideration in the form of a security ample to pay the debt has been given up for it.

We need only say as to the amount paid into the land, that we find from the proof that only $776 is shown certainly to have gone into the land. There is some suspicion raised that more may have been paid, and Anthony says, in original examination, he used about $1,300, but he is weakened in this statement on cross-examination too much to be relied on, and the other testimony rebuts the truth of the statement.

The result is, we hold, that on the facts in this record, Logue holds the legal title under the deed of trust *bona fide,* and for valuable consideration, and not

simply for a pre-existent debt, and as against him complainants having no equity that can reach the land in his hands.

The report of Referees is disapproved, decree of the chancellor affirmed, and bill dismissed with costs.